IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SHANNON EUGENE LANE HELTON, | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv296 |
| POWLEDGE UNIT, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Shannon Eugene Lane Helton, a former inmate in the Powledge Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis,* brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

**Procedural history**

In his Original Complaint (Dkt. #1), Plaintiff sues the Powledge Unit, Correctional Managed Care at the Powledge Unit. Warden Unknown Bowman, Assistant Warden Unknown Mitchell, Plant Manager Unknown Minton, Assistant Plant Manager Unknown Hasty, Powledge Unit Practice Manager Michael Sizemore, and Powledge Unit Interim Practice Manager Pam Pace for deliberate indifference to his serious medicals needs pertaining to his work restrictions. Plaintiff seeks prospective injunctive relief in the form of surgery for the broken screw in his spine and treatment for his pain. Plaintiff does not seek compensatory damages.

In response to the Court's Order (Dkt. #13), Plaintiff filed an Amended Complaint. (Dkt. #18). In the Amended Complaint, Plaintiff voluntarily dismissed the Powledge Unit and the Correctional

Managed Care at the Powledge Unit recognizing that the unit and the medical department were not "persons" that could be sued pursuant to 42 U.S.C. § 1983. (Dkt. #21).

The Amended Complaint named Warden Bowman, Assistant Warden Mitchell, Plant Manager Minton, Assistant Plant Manager Hasty, Practice Manager Sizemore, and Interim Practice Manager Pace as defendants. Plaintiff brought claims for deliberate indifference to his serious medicals needs pertaining to his work restrictions. He seeks prospective injunctive relief in the form of surgery for the broken screw in his spine. He does not request compensatory damages. An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaint is the governing complaint in this case.

The Court, thereafter, ordered the Office of the Attorney General of Texas to file a report addressing Plaintiff's medical claims and work restrictions, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval in *Parker v. Carpenter*, 978 F.2d 190, 191-92 (5th Cir. 1992)). (Dkt. #11). The Office of the Attorney General filed the *Martinez* Report on December 3, 2020 (Dkt. #27). Plaintiff did not file a response to the *Martinez* Report.

### Plaintiff's Claims

Plaintiff states that screws and hardware were placed in his back during a 1999 back surgery. He maintains that he was attacked by an inmate on December 10, 2018. He contends that in the process of separating the attacking inmate from him, an officer broke the screw in Plaintiff's back.

Plaintiff is suing Defendants because he was forced to work with a broken screw in his spine and was in pain for seventeen months. He alleges that Defendants failed to relieve him from work even after surgeons told them to do so. Plaintiff states that he worked in the unit metal fabrication plant and did heavy work building dump trucks for the Texas Department of Transportation. He further claims

that after prostrate surgery on November 12, 2019, he was forced to work while having a catheter. He asserts that he was not supposed to be working per his surgeons.

To his Original Complaint, Plaintiff attached a Step 1 grievance, Grievance No. 2020118433, dated May 10, 2020, and a Step 2 grievance, Grievance No. 2020099592, dated April 22, 2020, to his complaint. (Dkt. #1). To his Amended Complaint. Plaintiff attached:

- a Step 1 grievance, Grievance No. 2020118433,
- a Step 1 and Step 2 grievance, Grievance No. 2020099592,
- a Step 1 and Step 2 grievance, Grievance No. 2020108746,
- a Step 1 and Step 2 grievance, Grievance No. 2020108386
- a Step 2 grievance, Grievance No. 2020102439, and
- a Step 1 and Step 2 grievance, Grievance No. 2020106620.

See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999) (holding that a court is limited to a consideration of the well-pleaded allegations of Plaintiff's complaint, including any attachments thereto or documents incorporated by reference therein); Wright v. Dollar Tree Stores, Inc., 2014 WL 11456816 (N.D. Tex. Sept. 16, 2014).

### *Martinez* Report

Pursuant to an order of the Court, the Office of the Attorney General of Texas filed a report (Dkt. #27) addressing Plaintiff's medical claims and work restrictions, in accordance with *Martinez*, 570 F.2d at 317. The report includes:

(1) An affidavit by Dr. Steven Bowers, including Plaintiff's relevant medical records, with a business records affidavit,

(2) Job Descriptions for Plaintiff's work assignments, with a business records affidavit, and

(3) A no records affidavit for disciplinary records pertaining to Plaintiff.

Based upon his review of Plaintiff's various medical records, Dr. Bowers opined:

> Helton asked for his work restrictions to be removed on June 7, 2019, and again on December 30, 2019. Based on his request, his work restrictions were removed. Following Helton's return to the Powledge Unit on November 15, 2019, the transfer screening form indicated Helton was returning from a dental appointment not prostate surgery. Following his return Helton did not submit a sick call request or make complaints to medical personnel regarding being unable to work or that he needed restrictions.
>
> Based on my review of Helton's medical record, it was not until February 7, 2020, that a CT [scan] showed Helton had a mild bend to his L5 screw. X-rays taken on February 18, 2020, showed the L5 screw was broken. On April 14th, 2020, Helton was ordered a medically unassigned restriction as recommended by Hospital Galveston. This restriction remained in place until Helton's release from TDCJ on July 16, 2020. Review of Helton['s] medical record reveal he did not request work restrictions between February 7, 2020, and April 14, 2020.

(Dkt. #29, p. 10).

The Court has conducted an independent review of the medical records. Based on the review, the Court finds that the *Martinez* report accurately summarizes the contents of the medical record with respect to Plaintiff.

## Preliminary Screening.

Plaintiff, while as an inmate in the Texas prison system, was permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under Section 1915(e)(2). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an

indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts, when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Once "a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Id*. at 792. (explaining that "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

**Discussion and Analysis**

Plaintiff alleges that Defendants Warden Bowman, Asst. Warden Mitchell, Plant Manger Minton, Asst. Plant Manager Hasty, Practice Manager Sizemore, and Interim Practice Manager Pacer were deliberately indifferent to his work restrictions on May 9, 2019. (Dkt. #18, p. 5). Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). Requiring a prisoner to do work that officers know will aggravate a serious medical condition is cruel and unusual. *Jackson v. Cain*, 864 F.2d 1235, 1245-46 (5th Cir. 1989).

"[P]rison work requirements which compel inmates to perform physical labor, which is beyond their strength, endangers their lives, or causes undue pain constitutes cruel and unusual punishment." *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983). In *Jackson*, 864 F.2d at 1235, the Fifth Circuit held that "[i]f prison officials knowingly put [a prisoner] on a work detail which they know would significantly aggravate his serious physical ailment such a decision would constitute deliberate indifference to serious medical needs," in violation of the Eighth Amendment. *Id*. at 1246; *see also Mendoza v. Lynaugh,* 989 F.2d 191, 194 (5th Cir. 1993) ("To be sure, if prison officials assign an inmate to work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference" (citing *Jackson*, 864 F.2d at 1246)); *see also Calhoun v. Hargrove,* 312 F.3d 730, 734-35 (5th Cir. 2002) (finding claim sufficient to survive a motion to dismiss where prison official purportedly knew about a four-hour medical work restriction but forced inmate to work long hours, which raised blood pressure to dangerously high levels).

In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court clarified that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id*. at 837. "While … deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835.

Allegations of a negligent assignment to work that is beyond the prisoner's physical abilities, *Jackson,* 864 F.2d at 1246, or a mere disagreement about a work assignment will not state a claim of deliberate indifference. *See, e.g., Douglas v. McCasland,* 194 F. App'x 192 (5th Cir. 2006) (finding claim frivolous where plaintiff fails to show that defendants knowingly assigned him work that would significantly aggravate his medical condition); *Freeman v. Alford*, 48 F.3d 530 (5th Cir. 1995) (not designated for publication). To succeed on a deliberate indifference work restrictions, claim, a plaintiff must show that his job assignment significantly aggravated a serious physical ailment. *Jackson,* 864 F.2d at 1246-47.

"Deliberate indifference is an extremely high standard to meet." *Horn v. Vaughan,* 469 F. App'x 360, 363 (5th Cir. 2012) (per curiam) (unpublished) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (citation and internal quotation marks omitted)). To avoid liability, "[p]rison officials charged with deliberate indifference might show ... that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer, 511 U.S.* at 844. Furthermore, evidence that an official was aware of a substantial risk to inmate safety does not alone establish deliberate

indifference. As the Supreme Court explained in *Farmer*, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. A court may consider the medical records to determine that the quality or nature of medical treatment did not amount to deliberate indifference. *Varnado v. Collins*, 920 F.2d 320 (5th Cir. 1991).

1. Claims against the Practice Managers.

    Plaintiff is suing Defendants Sizemore and Pace because they each:

    (1) delayed his right to medical care after doctor's orders,

    (2) intentionally interfered with treatment ordered by his doctor,

    (3) intentionally denied, and delayed medical treatment ordered by his doctor,

    (4) caused cruel and unusual treatment by causing him to work in a heavy metal fabrication shop against doctor's orders, and

    (5) showed deliberated indifference to a serious medical need diagnosed by a physician as mandating treatment.

(Dkt. #18, p. 15). Other than his global statements, Plaintiff does not provide any facts or explanation as to how Defendants Sizemore or Pace denied or delayed him access to medical care for his back injury or caused him to work beyond his work restrictions.

Rule 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id*. at 678.

Plaintiff does not allege that Defendants Sizemore or Pace participated in making medical decisions or participated in providing direct care to Plaintiff for his injuries. The Court is aware that a unit Practice Manager is not a medical provider and does not provide direct medical care to any inmate. To the extent that he is suing Defendants Sizemore and Pace for deliberate indifference to his serious medical needs, the Court notes that the Fifth Circuit and this Court have found that a practice manager is not a medical provider or a nurse; rather, Defendants Sizemore and Pace are practice managers, and their duties include submitting responses to prisoner grievances. *See Criollo v. Milton*, 414 F. App'x 719, 721 (5th Cir. 2011) (unpublished) ("This argument lacks merit, however, because Criollo has not shown how either Pace, as practice manager, or Smith, as program administrator, had any role in his medical treatment."); *see also McCoy v. Murray*, No. 6:14-cv-228, 2014 WL 2090449 *1 (E.D. Tex. May 19, 2014). Plaintiff has not asserted any facts that Defendants Sizemore or Pace were personally involved in his medical treatment, his assignment to work in the metal fabrication shop, or the determination of his work restrictions.

To the extent Plaintiff would impute knowledge of his medical problems to Defendants Sizemore or Pace through his grievances, that claim would still fail. *See, e.g.*, *Whitlock v. Stephens*, Civil Action No. 5:14cv94, 2016 WL 11474208, at *5 (E.D. Tex. Oct. 5, 2016) (stating that prisoner "cannot use the grievance process to impute personal liability," where prisoner merely alleged that the warden investigated and signed prisoner's grievance); *Marquez v. Quarterman*, 652 F. Supp. 2d 785, 790 (E.D. Tex. 2009) ("Plaintiff does not have a basis for a civil rights lawsuit against [defendant] just because he denied the Plaintiff's Step 2 grievance."); *Lueck v. Wathen*, 262 F. Supp. 2d 690, 696 (N.D. Tex. 2003) (explaining that prisoner's claim against assistant warden, who served on prison grievance committee and allegedly wrongfully denied prisoner's grievance, failed to state a claim where prisoner did not allege warden was personally involved in any constitutional violation, as "[p]ersonal

9

involvement is an essential element in a civil rights action") (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)). Accordingly, there is nothing to suggest that Defendants Sizemore or Pace had any personal involvement in Plaintiff's medical care, or lack thereof regarding his work restrictions.

To the extent that Plaintiff is suing Defendants Sizemore and Pace over the responses to his grievances, he has failed to state a claim upon which relief may be granted. Plaintiff does not have a liberty interest in having his prison administrative complaints resolved in any particular manner. *See Geiger v. Jower,* 404 F.3d 371, 373–74 (5th Cir. 2005). Plaintiff cannot state a claim upon which relief may be granted over his grievances because he has no constitutional right to have his grievances resolved to his satisfaction. *Id*. Plaintiff's claims against Defendants Sizemore and Pace should be dismissed for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

2. <u>Claims regarding Supervisor Liability</u>.

Plaintiff also asserts a deliberate indifference claim against Defendants Bowman, Mitchell, Minton, and Hasty. He globally contends that each Defendant:

(1) delayed Plaintiff's right to medical care,

(2) intentionally interfered with treatment ordered by Plaintiff's doctor,

(3) intentionally denied and delayed medical treatment ordered by the doctor,

(4) caused cruel and unusual treatment by causing Plaintiff to work in a heavy metal fab shop against his doctor's orders, and

(5) showed deliberate indifference to a serious medical need diagnosed by a physician as mandating treatment.

(Dkt. #18, p. 14). Other than these broad statements, Plaintiff does not provide any facts or explanation as to how any of these Defendants denied or delayed him access to medical care for his back injury or

caused him to work beyond his work restrictions. He has not asserted any facts that any of these Defendants were personally involved in his medical treatment, his assignment to work in the metal fabrication shop, or the determination of his work restrictions. Plaintiff is essentially suing these Defendants in their role as supervisors at the Powledge Unit. The Court construes Plaintiff's claims as brought under the theory of *respondeat superior*.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez*, 801 F.2d at 793. Plaintiff does not allege that any of these Defendants participated in making medical decisions or participated in providing his direct care. Plaintiff does not allege that any of the Defendants participated in assigning or changing his work restrictions. These Defendants were sued because of their respective supervisory roles. The doctrine of *respondeat superior*, however, does not apply in Section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990).

Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. In fact, the Supreme Court has held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in Section 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194–95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

The Fifth Circuit has not yet interpreted this holding of *Iqbal*. Nonetheless, under existing Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the moving force of the constitutional violation. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303–304 (5th Cir. 1987). None of these three conditions contradict *Iqbal* but are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the Section 1983 setting. Plaintiff's allegations do not satisfy any of the three conditions.

These supervisory Defendants can be held liable only to the extent that each was personally engaged in misconduct. *See Johnson v. Thaler*, 2011 WL 2433623, at *3 (E.D. Tex. May 18, 2011). Here, all Plaintiff has alleged is that each Defendant is somehow responsible for the broken screw in his back, his pain, and that he was working in the metal fabrication shop. Plaintiff has not stated any facts that would connect any action or inaction of any Defendant to his medical condition, work restrictions, or resulting pain. Plaintiff has failed to state a claim upon which relief may be granted against these Defendants. It is recommended that Plaintiff's claims against Defendants Bowman, Mitchell, Minton, and Hasty be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

3. <u>Claims for Prospective Injunctive Relief</u>.

In his Amended Complaint, Plaintiff moves for prospective injunctive relief for the Court to order the Defendants to provide him with the surgery that the Texas Department of Criminal Justice and the University of Texas-Medical Branch said they would do. (Dkt. #18, p. 5). On July 24, 2020,

Plaintiff notified the Court that he was released from confinement and was living in a private residence. (Dkt. #15).

Plaintiff's request for prospective injunctive relief for surgery became moot upon his release. *Cooper v. Sheriff, Lubbock Cnty., Texas*, 929 F.2d 1078, 1084 (5th Cir. 1991). The Fifth Circuit reiterated that a prisoner's transfer from a prison unit rendered his claim for injunctive relief against the defendants at that unit moot. *Vincent v. Stevenson*, 106 F.3d 397, 1997 WL 33444 (5th Cir. 1997) (unpublished table decision); *see also, Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). The Court recommends that Plaintiff's claim for prospective injunctive relief be dismissed as moot.

## Recommendation

It is recommended that Plaintiff's complaint be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. In order to be specific, an objection must identify the specific finding or recommendation to which an objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions

accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 3rd day of February, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE